UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **Leslianne Lichtman,**  *Plaintiff*,  v.  **Credence Resource Management, LLC,**  *Defendant*. | Case No: 8:21-cv-2367  **JURY TRIAL DEMANDED** |

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Leslianne Lichtman**, ("**Ms. Lichtman**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Credence Resource Management, LLC** ("**Credence**") stating as follows:

### PRELIMINARY STATEMENT

1. This is an action brought by Ms. Lichtman against Credence for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**").

### JURISDICTION AND VENUE

2. Subject matter jurisdiction exists pursuant to 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331, as the Plaintiff is bringing this action under the FDCPA, a federal statute.

3. The Defendant is subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Section 48.193, Florida Statutes.

4. Venue is proper in Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

5. Ms. Lichtman is a natural person residing in the city of St. Petersburg, Pinellas County, Florida.

6. Ms. Lichtman is a *Consumer* as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a(3).

7. Credence is a Nebraska limited liability company with a primary business address of 4222 Trinity Mills, Suite 260, Dallas, Texas 75287.

8. Credence is registered to conduct business in the state of Florida, where its registered agent is **Corporate Service Company, 1201 Hays Street, Tallahassee, Florida 32301.**

9. Credence is licensed as a Consumer Collection Agency ("**CCA**") by the Florida Office of Financial Regulation.

10. As a licensed CCA, Credence knows, or should know, the requirements of the FDCPA.

11. Credence is a "debt collector" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), in it uses use an instrumentality of interstate commerce, including

postal mail and the internet, for their businesses, the principal purposes of which are the collection of debts, and/or they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

### The Alleged Debt

12. In or around June 2020, Ms. Lichtman allegedly incurred a debt of $1,581 (the "**Debt**") to T-Mobile ("**T-Mobile**") for cellular phone and internet services.

13. The alleged Debt arose from personal cell phone and internet services and therefore meets the definition of *debt* under the FDCPA, 15 U.S.C. §1692a(5).

14. Around December 2020, T-Mobile assigned, or otherwise transferred the Debt to Amsher Collection Services, Inc. ("**Amsher**"), an Alabama-based debt collector.

15. Beginning in March 2021, Amsher began reporting the Debt, monthly, to Experian Information Solutions, Inc. ("**Experian**"), a nationwide Credit Reporting Agency ("**CRA**"). **SEE PLAINTIFF'S EXHIBIT A.**

16. Amsher reported to Experian that Ms. Lichtman owed $1,581, with an original creditor of "T-Mobile" and a Date of First Delinquency ("**DOFD**") of June 2020. *Id.*

17. Amsher also reported that the Debt was in collections and the individual responsibility of Ms. Lichtman. *Id.*

### Ms. Lichtman's Dispute of the Debt

18. On or around March 19, 2021, Ms. Lichtman requested and obtained a copy of her consumer credit disclosure from Experian.

19. Ms. Lichtman saw the Amsher tradeline reporting to her credit and on that day, disputed Amsher's reporting of the account.

20. Experian, upon receipt of Ms. Lichtman's dispute, sent Amsher an Automated Consumer Dispute Verification ("**ACDV**") form through an online platform known as e-OSCAR and asked Amsher to make a reasonable investigation into the dispute.

21. Amsher thus knew that Ms. Lichtman disputed the Debt, at least as early as March 2021.

22. A debt collector who becomes aware a debt is disputed is required to include notice of dispute in all subsequent communications in connection with the collection of that debt. *See* 15 U.S.C. § 1692e(8).

### Disputed, Deleted Debt Re-Reported by Credence

23. On information and belief, Amsher returned the Debt to T-Mobile, noting that Ms. Lichtman disputed the account.

24. T-Mobile thereafter assigned the Debt to another debt collector – Credence.

25. On information and belief, T-Mobile informed Credence of Ms. Lichtman's existing dispute.

26. Alternatively, T-Mobile failed to communicate the Debt was disputed after having been informed of such from Amsher, in contradiction of T-Mobile's legal obligations.

27. Credence, in turn, began reporting the Debt monthly to Experian, beginning in August 2021. **SEE PLAINTIFF'S EXHIBIT B.**

28. Credence reported the same balance, account status, DOFD, original creditor and ECOA code as Amsher.

29. The only difference in the data was the "date open" for collection, and the "date first reported."

30. Credence failed to indicate that the Debt was disputed in its report concerning the Debt. *Id.*

31. Credence is a large debt collector and receives a considerable number of disputes concerning cell phone debts it reports to CRAs.

32. Credence knew, when it received a portfolio of charged-off debts for collection from T-Mobile in June 2021, which included Ms. Lichtman's purported Debt, that it was not the first collection agency to be assigned the accounts.

33. Credence thus knew—or reasonably should have known – a considerable number of the accounts had been previously disputed and had to be reported as such.

34. Credence had no policies in place to so much as even *ask* creditors like T-Mobile who place debts for collection with it if the creditor was aware of any prior disputes by the relevant consumers.

35. Assuming, *arguendo*, that T-Mobile failed to disclose to Credence the Debt was disputed, reliance on an original creditor's erroneous records is not a defense to an FDCPA action. *See Foster v. Franklin Collection Service,* Civil Action Number 5:17-cv-00008-TES M.D. GA 9-13-2018 (holding that Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1270 (11th Cir. 2011) is binding in the 11th Circuit, which "subjects debt collectors to liability even when violations are not knowing or intentional.").

36. When reporting information to nationwide CRAs, like Experian, data furnishers, including Credence, prepare reports using the Metro 2 language created and maintained by the *Consumer Data Industry Association* ("**CDIA**").

37. Metro 2 contains ten "compliance condition codes" ("**CCCs**") for data furnishers to notate accounts as disputed, previously disputed, and so on.

38. When Credence re-reported the Debt, it did not report any CCC.

39. The tradeline thus continued to appear on Ms. Lichtman's credit report as a "non-disputed" debt.

40. Credence thus should have reported the Debt with an indication of "account information disputed by consumer," using the CCC code "XB."

41. Credence's failure to disclose that the Debt was disputed materially damaged Ms. Lichtman's credit scores.

42. The failure to properly report a disputed debt *as disputed* creates a concrete injury-in-fact because the failure to disclose this information affects credit scores,

meaning Ms. Lichtman suffered "a real risk of financial harm caused by an inaccurate credit rating." *Evans v. Portfolio Recovery Associates*, 889 F. 3d 337, 345 (7th Cir 2018).

### Credence Reports False "Status Date" and "Date Opened"

43.     The "Date Open" and "Status Date" are key points of data evaluated by many versions of FICO® credit scores, including FICO Model II, used by Experian for mortgage evaluations. The more recent the "Date Open" and "Status Date," the more adverse the information is factored against the consumer. *See Toliver v. Experian Info. Solutions, Inc.*, 973 F. Supp. 2d 707 (S.D. Tex. 2013) "(Plaintiff) has produced evidence to suggest that the FICO credit scoring model affords greater weight to recent delinquencies, and that the 'Aug.2011' 'Date Open' entry on her Experian credit report could make it appear as though the account became a collection account more recently than it actually did.")

44.     Credence reported the Debt to Experian with a "date of status" of June 2021 and a status of "collection account."

45.     Credence thus indicated to anyone viewing Ms. Lichtman's credit report that the underlying account first became a collection account in June 2021.

46.     This is false, as the underlying Debt was first a collection account at least as early as December 2020 – when it was assigned to Amsher for collection.

47.     Likewise, Credence reported to Experian that the T-Mobile account had a "Date Opened" of June 2021. *Id.*

48. Credence's reported information is false, as Ms. Lichtman opened the account with T-Mobile prior to May 2020.

49. Ms. Lichtman's Experian credit report contains a number of different tradelines.

50. In many of these tradelines, the "Date Opened" indicates the actual date the account was opened *with the original creditor*.

51. A reasonable and prudent reader of Ms. Lichtman's credit report would infer that an account indicating a balance owed to T-Mobile reflecting a "Date Opened" of June 2021 means – as the plain language implies – the account was opened *with T-Mobile* in June 2021. See *Toliver*, Id. ("Here, there is no language to indicate that 'Date opened' means anything other than the date that the consumer opened the account, as it does for the majority of accounts on (Plaintiff's) credit report…. (A) reasonable jury could find that the "Date opened" entry was misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.") (Internal quotations omitted).

52. "A reasonable jury could find that the 'Date open' entry was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id.,* quoting *Sepulvado v. CSC Credit Services, Inc.*, 158 F.3d 890 (5th Cir. 1998).

53. Credence's reporting would lead a reasonable viewer of Ms. Lichtman's credit report to believe that the Debt was a more recent account than is actually the case.

54. Credence's reporting thus caused damages to Ms. Lichtman in the form of loss of credit and an inability to obtain new credit.

55. Ms. Lichtman has also spent time and money to correct her file, including time spent engaging attorneys.

56. Ms. Lichtman has hired the aforementioned law firm to represent her in this matter and is obligated to pay its reasonable fees and / or has assigned her right to attorney fees and costs to the law firm.

## COUNT I
## VIOLATIONS OF THE FDCPA

57. Ms. Lichtman adopts and incorporates paragraphs 1 – 56 as if fully stated herein.

58. Credence violated **15 U.S.C. § 1692e and 1692e(10)** when Credence made false and/or misleading representations in an attempt to collect the Debt, when it reported the Debt to Experian, claiming the "status date" of the Debt (e.g., the date which the account became a collection) was June 2021, when it was December 2020 or earlier, that the account was first opened with T-Mobile in June 2021, when it was opened in June 2020 or earlier, and that the Debt was not disputed, when it was disputed.

59. Credence violated **15 U.S.C. § 1692e(8)** when Credence communicated credit information known to be false, specifically, the "status date" of the Debt (e.g., the date which the account became a collection) was June 2021, when it was December 2020 or earlier, that the account was first opened with T-Mobile in June 2021, when it

was opened in June 2020 or earlier, and that the Debt was not disputed, when it was disputed.

60. Credence violated **15 U.S.C. § 1692e(8)** when Credence communicated credit information which was known to be disputed, or which should have been known to be disputed, without disclosure of dispute, in its reports to Experian in August 2021.

61. Credence violated **15 U.S.C. § 1692e(2)(a)** when Credence made false and misleading representations about the character, amount and legal status of the Debt when it reported the Debt to Experian, claiming the "status date" of the Debt was June 2021, when it was December 2020 or earlier, that the account was first opened with T-Mobile in June 2021, when it was opened in June 2020 or earlier, and that the Debt was not disputed, when it was disputed.

62. Credence's actions render it liable for the above-stated violations of the FDCPA, and Ms. Lichtman is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

**WHEREFORE,** Ms. Lichtman respectfully requests this Honorable Court enter judgment against Credence and for her as follows:

    a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

    c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

    d.    Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on October 7, 2021, by:

**SERAPH LEGAL, P. A.**

/s/ *Bridget L. Scarangella*
Bridget L. Scarangella, Esq. (Lead)
Florida Bar No.: 1022866
BDow@seraphlegal.com
/s/ *Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar No.: 118103
tbonan@seraphlegal.com
1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
Counsel for Plaintiff

**EXHIBIT LIST**
A – Excerpt from Consumer's Experian Disclosure Dated 4/10/2021
B – Excerpt from Consumer's Experian Disclosure Dated 8/20/2021